[Cite as *State v. Burns*, 2011-Ohio-4230.]

[Please see original opinion at 2011-Ohio-3056.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95465**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**DANIEL BURNS**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-531793

**BEFORE:** S. Gallagher, J., Kilbane, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** August 19, 2011

**ATTORNEYS FOR APPELLANT**

Stephen D. Hartman
Kerger & Hartman, LLC
33 S. Michigan Street
Suite 100
Toledo, OH   43604

Karin Coble
4334 W. Central Avenue
Suite 226
Toledo, OH   43615


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Mary Court Weston
         Kristen L. Sobieski
Assistant Prosecuting Attorneys
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH   44113

ON RECONSIDERATION[1]

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant Daniel Burns ("Burns") appeals his conviction following a jury trial in Cuyahoga County Common Pleas Court Case No. CR-531793 of one count of engaging in a pattern of corrupt activity, four counts of tampering with records, and one count of theft in office. The trial court sentenced Burns to a six-year term of incarceration and ordered him to pay a $100,000 fine and $123,192.74 in restitution. For the following reasons, we affirm in part the decision of the trial court, reverse in part, and remand for further proceedings consistent with this opinion.

{¶ 2} Burns was the chief operating officer at the Cleveland Municipal School District ("CMSD"). Burns placed orders for three Ryobi duplicator machines from his co-defendant, John Briggle's ("Briggle") company. In order to initiate the purchase, Burns created and processed a resolution to purchase. This resolution was circulated per CMSD policy to various decision-making persons within the organization. Once approved by all the necessary parties, the resolution

---

[1] The original announcement of decision, *State v. Burns*, Cuyahoga App. No. 95465, 2011-Ohio-3056, released June 23, 2011, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. See App.R. 22(C); see, also, S.Ct.Prac.R. II, Section 2(A)(1).

was returned to Burns so a purchase order could be prepared and sent to Briggle's company, Superior Offset Supplies, Inc. ("SOS"). This was done three times for the purchase of six duplicator machines total, two at a time. CMSD issued a check for $49,500 to SOS for each of the three invoices. Two checks for consulting services were paid to SOS, one in the amount of $5,900. None of the duplicators or consulting services were ever delivered.

{¶ 3} After each check was issued, Burns had his secretary pick it up. Burns then hand-delivered the checks to Briggle. Briggle testified that he would cash the checks and split the proceeds with Burns. All of those events occurred between December 17, 2007 and about June 2008.

{¶ 4} In November 2008, a CMSD employee questioned the five transactions. The unusual aspect of the transactions was the fact that the three checks for the duplicators were each just under the $50,000 bid limit, which would have required a more formal process, and the purchases of the duplicators were accomplished in separate installments. The employee thought that most purchases of this nature should occur at one time to get the best pricing on the individual units. Last, the checks were hand-delivered, and the address of SOS was a residential house in Toledo, Ohio, not a commercial address.

{¶ 5} Briggle testified that he and Burns had an arrangement to create quotes and invoices for the duplicator machines without any intention to deliver them. The

same arrangement was in place for the two checks for consulting services. Briggle testified that they would split the proceeds. Burns would push through the paperwork on CMSD's end, and Briggle would create the purchase documents and cash the checks. The state did not present direct evidence of a money trail from Briggle to Burns.

{¶ 6} Briggle pleaded guilty to various charges and testified against Burns as part of the plea deal. Burns was convicted by a jury of one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), four counts of tampering with records in violation of R.C. 2913.42(A), and one count of theft in office in violation of R.C. 2921.41(A)(1). The trial court sentenced Burns to six years of incarceration on the theft in office count, running all other sentences concurrent, and imposed fines and restitution. Burns filed this timely appeal, raising six assignments of error, which are as follow:

> **"I.   The trial court violated Burns' right to Due Process by failing to instruct the jury on the elements of theft, or the element of 'deception,' underlying the Theft in Office charge, and by not dismissing the Theft in Office count when the jury failed to find all the elements of theft, by deception or otherwise."**

> **"II.   The trial court violated Burns' right to due process by taking judicial notice of the 'government record' element of the tampering with records counts, and erred by denying his Crim.R. 29 motion for acquittal. In addition, the convictions were against the manifest weight of evidence."**

> **"III.   The trial court abused its discretion when ordering restitution and imposing fines."**

**"IV.   There was no proof of an 'enterprise' separate and apart from the alleged criminal activity, to support a conviction for engaging in a pattern of corrupt activity.   The conviction, therefore, was unsupported by the evidence and against the manifest weight of evidence."**

**"V.   Because the tampering with records and theft in office counts must be reversed, the conviction for engaging in a pattern of corrupt activity must also be reversed."**

**"VI.   The defendant was prejudiced by his trial counsel's deficient performance, and was thereby deprived of his 6th Amendment right to counsel."**

{¶ 7}   We will address these assignments of error by combining any overlapping arguments.

**Jury Instructions**

{¶ 8}   Burns's first assignment of error and the first part of the second assignment of error challenge the propriety of the trial court's jury instructions.   Burns argues that the trial court improperly instructed the jury on the elements of a theft in office charge by omitting the specific elements of "theft" or "theft by deception."   The relevant portion of his second assignment of error challenges the jury instruction relating to the trial court taking judicial notice of the fact that CMSD is a governmental entity — a fact elevating the tampering with records from a misdemeanor to a felony level offense.   These assignments of error are without merit.

{¶ 9}   A defendant may not assign as error the giving or omitting any instructions unless she objects before the jury retires and further objects by "stating

specifically the matter objected to and the grounds of the objection." Crim.R. 30(A). The record reflects that Burns never objected to the jury instructions at trial and therefore has waived all but plain error on appeal. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B).

{¶ 10} Under Ohio law, the state must prove every element of the charged offense beyond a reasonable doubt. Jury instructions that shift the state's burden, or relieve it altogether, violate a defendant's due process rights. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 97. It has been long held that "an erroneous jury instruction does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise. Additionally, the plain error rule is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." (Internal citations and quotations omitted.) *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 227, 448 N.E.2d 452. A trial court's failure to charge the jury on every specific element of the offense does not per se constitute plain error. *State v. Adams* (1980), 62 Ohio St.2d 151, 154, 404 N.E.2d 144. "The reviewing court must examine the record in order to determine whether that failure may have resulted in a manifest miscarriage of justice." Id. at paragraph three of the syllabus.

1. Theft in office jury instruction

{¶ 11} In the current case, Burns was charged with theft in office, which is defined as follows: "No public official or party official shall commit any theft offense, as defined in division (K) of section 2913.01 of the Revised Code, when either of the following applies: (1) The offender uses the offender's office in aid of committing the offense or permits or assents to its use in aid of committing the offense; [or] (2) [t]he property or service involved is owned by this state, * * *." R.C. 2921.41(A). A theft in office charge relies on a predicate "theft offense," defined as any violation of several sections of the Revised Code, which include for our purposes both R.C. 2913.02 (Theft and Fraud) and R.C. 2913.42 (Tampering with Records). R.C. 2913.01(K).

{¶ 12} We first note that Burns's conviction on the four counts of tampering with evidence could have served as the predicate theft offense for the theft in office charge. The state is not limited to proving a "theft" occurred. The state never specified the predicate theft offense in the indictment, nor argued that the charges of tampering with records served as such. Furthermore, the trial court's jury instruction stated that a "theft offense is [defined as] knowingly obtain[ing] or exerting control over property or services with purpose to deprive the owner of such property or services[,]" the first three elements of theft as defined in

R.C. 2913.02(A). We will therefore address this assignment of error as argued by Burns; that is, by assuming the predicate offense is theft.

{¶ 13} Burns argues the trial court's instruction improperly omitted all the elements of theft, which include the three elements contained in the court's above instruction in addition to one of the following: that the theft was committed without or beyond the consent of the owner, or by deception, threat, or intimidation. R.C. 2913.02(A)(3)-(5).

{¶ 14} The state's case established that Burns and Briggle received money they were not entitled to by invoicing for equipment and services that were not delivered to CMSD. Implicitly, Burns either received money that exceeded the consent of CMSD, since the goods and services were never received and CMSD's consent was limited to paying for that which it received, or committed the theft by deceiving CMSD into believing that equipment was actually purchased. Under either characterization, the entire theft plan was set up to obtain something by deception. Burns submitted Briggle's false invoices, all of which were under the bid limit, to CMSD in order to deceive CMSD into paying for equipment never received and services never rendered. The omission of the specific instruction that the jury needed to find deception for the theft in office charge did not deprive Burns of a fair trial or result in a manifest miscarriage of justice in this case. The theft was predicated upon deception, unlike situations where the thief merely

surreptitiously takes something. The jury, finding Burns guilty of theft, inherently found that Burns deceived CMSD. No other theory was advanced at trial for the jury's consideration. We therefore cannot conclude that the trial court's omission of the additional elements of theft in the jury instruction rises to the level of plain error in this case. Burns's first assignment of error is overruled.

2. Tampering with records jury instruction

{¶ 15} Burns next argues that if a trial court takes judicial notice of a fact in a criminal case, the court must instruct that such action creates a rebuttable presumption in favor of the fact established, compared to being irrefutably established.

{¶ 16} Trial courts are permitted to take judicial notice of adjudicative facts. Evid.R. 201(A). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably be questioned." Evid.R. 201(B). Parties are entitled to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed upon timely request to an opportunity. Evid.R. 201(E). In addition, in a criminal case, the court must instruct the jury that it may, but is not required to, accept the fact judicially noticed. Evid.R. 201(G); *State v. Baker* (Sept. 23, 1982), Montgomery App. No. 7753. The defendant may present

evidence to the trier of fact that directly contradicts the judicially noticed fact.  Id. The jury is entitled to resolve the issue in favor of either party, and the judge must instruct accordingly.  Id.

{¶ 17} In this case, the trial court took judicial notice of the fact that CMSD is a governmental entity.  Tampering with records is elevated to a felony of the third degree if the records belong to a governmental entity.  R.C. 2913.42(B)(4).  The trial court did not instruct the jury on the rebuttable presumption created by taking judicial notice.[2]  Burns, however, did not object to this omission and therefore has waived all but plain error.  Crim.R. 30(A).

{¶ 18} In this case, we agree with Burns.  The trial court should have instructed the jury on the rebuttable presumption created by taking judicial notice of the fact that CMSD is a governmental entity.  However, this minor omission would not have altered the outcome of the trial in this case, and Burns does not argue otherwise.  The Ohio Revised Code consistently establishes that CMSD is a governmental entity.  For example, R.C. 9.23 defines "governmental entity" as a political subdivision of the state.  R.C. 2744.01(F) "declares public school districts

---

[2]Contrary to Burns's argument that the trial court, in instructing the jury, stated "it must be 'governmental records' that were tampered with in order to find Burns guilty of the felony charges, the court stated: 'In this case it's the school system. It's the public school system.'"  The line Burns attributes to the court actually came from the prosecutor during closing arguments.  Although not dispositive of this assignment of error, our review of the record reveals that the trial court was silent as to the effect of the judicially noticed fact.

to be political subdivisions, and R.C. 2744.01(C)(2)(c) states that the provision of a system of public education is a governmental function." *Daniel v. Cleveland Mun. School Dist.*, Cuyahoga App. No. 83541, 2004-Ohio-4632, ¶ 11, (finding that CMSD is a political subdivision for the purposes of the political subdivision immunity statute).

{¶ 19} Furthermore, the jury found Burns guilty of theft in office pursuant to R.C. 2921.41, which requires a determination that either the property involved was owned by a political subdivision or that Burns was a public official working for a political subdivision. See R.C. 2921.41(A) and 2921.01(A). Under either, the jury must have determined that CMSD is a political subdivision in order to find Burns guilty of theft in office. Burns does not challenge the validity of the theft in office conviction based on the failure of the state to prove that CMSD is a political subdivision.

{¶ 20} Even if the jury was properly instructed on the judicial notice issue, Ohio statutes and case law conclusively establish that CMSD is a governmental entity and the jury already made the determination independent of the tampering with governmental records jury charge. No manifest miscarriage of justice stems from the trial court's inadvertent omission.

{¶ 21} For the foregoing reasons, Burns's first assignment of error and part of his second assignment of error on the jury instructions are overruled.

**Sufficiency of the Evidence**

{¶ 22} Burns's second assignment of error in part challenges the weight of the evidence supporting the tampering with records counts, and the fourth and fifth assignments of error challenge the sufficiency of the evidence supporting the count of engaging in a pattern of corrupt activity.

{¶ 23} Although Burns premised his fourth assignment of error and the second part of his second assignment of error on a manifest weight of the evidence standard, Burns essentially challenges the sufficiency of the evidence. Burns's theory is that the state failed to introduce any evidence that he tampered with the specific invoices or that the "enterprise" engaged in activity separate from the corrupt activity as required. Burns raised both arguments in a Crim.R. 29 motion at the close of the state's case. We therefore will review this part of his second assignment of error under the sufficiency of the evidence standard. We find merit to this portion of his second assignment of error, but find no merit to his fourth and fifth assignments of error.

{¶ 24} In reviewing a claim of insufficient evidence, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks* (1991), 61 Ohio

St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.   The weight to be given

the evidence and the credibility of the witnesses are primarily for the trier of fact.

*State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

    1. <u>Tampering with records</u>

**{¶ 25}** Burns was convicted of tampering with evidence.   The statute

prohibits one from knowingly defrauding or facilitating a fraud by tampering with a

record.   R.C. 2913.42(A).   Tampering is defined as falsifying, destroying,

removing, concealing, altering, defacing, or mutilating any writing, computer

software, data, or record.   Id.   An offender can also be convicted for tampering

with evidence by "uttering" a tampered record.   R.C. 2913.42(A)(2).   A person

"utters" if she issues, publishes, transfers, uses, delivers, displays, or circulates a

tampered record. R.C. 2913.01(H).   If the writing, data, computer software, or

record is kept by or belongs to a governmental entity, the tampering with records

charge is elevated to a felony of the third degree.   R.C. 2913.42(B)(4).

**{¶ 26}** In this case, the jury found Burns guilty of tampering with records; the

records being identified as four invoices from SOS. At trial, the evidence

established that Briggle created false invoices that were delivered to Burns, who in

turn delivered the false invoices to the appropriate parties at CMSD. There was a

separate count for tampering with the resolution authorizing a purchase order that

was dismissed prior to trial.   Burns argues that Briggle testified to creating the

invoices and therefore Burns did not himself tamper with the invoices. The evidence would arguably satisfy an uttering charge pursuant to R.C. 2913.42(A)(2) or even complicity pursuant to R.C. 2923.03. The state did not include an uttering charge in the indictment or pursue complicity at trial. The indictment only listed the elements of R.C. 2913.42(A)(1), tampering, and the trial court only instructed the jury on the R.C. 2913.42(A)(1) elements.[3] Thus, in order to sustain the conviction on tampering with records in this case, the state needs to establish that Burns falsified, destroyed, removed, concealed, altered, defaced, or mutilated each of the four invoices.

{¶ 27} Briggle testified to creating the invoices based on the information Burns provided in the resolutions. The state argues that since Burns created the resolutions that led to the creation of the invoices, he therefore tampered with the invoices. We find this argument without merit. The state could have charged Burns with tampering with the resolutions by providing false information for the

---

[3]A jury may be instructed on complicity when the defendant is charged for the principal offense. *State v. Herring*, 94 Ohio St.3d 246, 251, 2002-Ohio-796, 762 N.E.2d 940. Any due process concerns are satisfied because "R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense." Id. Under this rationale, we acknowledge that an indictment and bill of particulars need not specifically include a complicity charge. See *State v. White*, Summit App. Nos. 23955 and 23959, 2008-Ohio-2432, ¶ 28. In this case, however, the state did not advance the theory of complicity to commit tampering with records at trial, much less instruct the jury on such. Absent any arguments to the contrary, we must limit our consideration of this assignment of error to the principal offense of tampering with records.

purpose to defraud CMSD. Burns, however, did not create the invoices. At best, he aided and abetted or conspired with Briggle in that undertaking. See R.C. 2923.03.

{¶ 28} It can also be argued that Burns tampered with the records if we expand our consideration of the record to include more than just the single document. However, the indictment specifically refers to "invoices." The tampering with record statute relied on by the state requires proof beyond a reasonable doubt that Burns falsified, destroyed, removed, concealed, altered, defaced, or mutilated the four invoices listed in the indictment. R.C. 2913.42(A)(1). Even when reviewing the evidence in a light most favorable to the prosecution, we find that no evidence established that Burns tampered with the invoices himself. Briggle testified that he created the invoices and that Burns would deliver them. This part of Burns's second assignment of error is sustained. We are compelled by the plain meaning of R.C. 2913.42(A)(1) to reverse Burns's conviction and vacate his sentence on the four counts of tampering with evidence.

2. Engaging in a pattern of corrupt activity

{¶ 29} In Burns's fourth assignment of error, he argues that the state failed to establish the "enterprise" element of the count of engaging in a pattern of corrupt activity because an enterprise must be separate from the pattern of corrupt activity. In other words, Burns argues that the state failed to establish the "distinctness

element" of the pattern of corrupt activity charge. We find this argument without merit.

{¶ 30} The jury found Burns guilty of engaging in a pattern of corrupt activity. The relevant statute states in pertinent part: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." R.C. 2923.32(A)(1). "Pattern of corrupt activity" is further defined as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). Finally, R.C. 2923.31(C) defines an enterprise to include "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises."

{¶ 31} Burns relies on this court's decision in *Herakovic v. Catholic Diocese of Cleveland*, Cuyahoga App. No. 85467, 2005-Ohio-5985, for the proposition that to prove an association-in-fact enterprise, the state must establish the enterprise's separate existence, or distinctness, from the corrupt activity. Such reliance is misplaced. "Enterprise" is also defined as a corporation, sole proprietorship, or

other legal entity. In *Herakovic*, the issue was whether an association in fact existed. The court specifically noted that another appellate court employed a broader definition of "enterprise" when that court relied on the fact that a defendant received drugs through the drug trade from another country as the evidence that an enterprise existed. The *Herakovic* court noted that in that other case, the defendant also "used his business, a bar, as the location for partaking in the drug transactions. Enterprise is defined in R.C. 2923.71(C) as including a 'sole proprietorship.' This fact establishe[d] the distinctness element from the corrupt activity element and would be a more appropriate basis for finding the existence of an enterprise." Id. at ¶ 30.

{¶ 32} In this case, SOS was the enterprise. SOS lawfully engaged in business activity outside the activities associated with the pattern of corrupt activity. The state did not attempt to prove an association-in-fact enterprise, and we find the statement from *Herakovic* persuasive. The fact that SOS is a legal entity pursuing other lawful activities establishes the distinctness element separate and apart from the corrupt activity. Therefore, there was sufficient evidence establishing an enterprise, and Burns's fourth assignment of error is overruled.

3. The predicate offenses for engaging in a pattern of corrupt activity

{¶ 33} In his fifth assignment of error, Burns argues that because the two predicate offenses, tampering with records and theft in office, must be reversed, it must follow that the conviction for the engaging in a pattern of corrupt activity also must be reversed. We note that we have already overruled Burns's first assignment of error pertaining to the theft in office count. We will address this assignment of error only as it relates to the counts of tampering with records. Burns's fifth assignment of error is without merit.

{¶ 34} The jury found Burns guilty of engaging in a pattern of corrupt activity in violation of R.C. 2923.32, as we defined in detail in the preceding section. In addition, the statute provides that an offender must commit "two or more incidents of corrupt activity, whether or not there has been a prior conviction." R.C. 2923.31(E). In *State v. Lightner*, Hardin App. No. 6-08-15, 2009-Ohio-2307, the court held that "[a]lthough the predicate acts in R.C. 2923.31 need not be supported by convictions, their occurrence must at least be proven beyond a reasonable doubt. In addition, the state must set forth the requisite predicate acts in the indictment that it intends on using as the foundation for a R.C. 2923.32 offense. *State v. Muniz*, Cuyahoga App. No. 93825, 2010-Ohio-3720, ¶ 19. Corrupt activity is broadly defined as "engaging in, attempting to engage in, *conspiring to engage in*, or soliciting, coercing, or intimidating another person to engage * * *" in any number

of enumerated offenses, including theft and tampering with government records. (Emphasis added.) R.C. 2923.31(I)(2)(c).

{¶ 35} In other words, the state need not obtain a conviction for the predicate offenses in order obtain a conviction for engaging in a pattern of corrupt activity. It is sufficient to prove beyond a reasonable doubt the elements of the predicate offense. More important, the state need not prove that Burns actually engaged in the predicate offenses. Burns's guilt can be based on conspiring to engage in the predicate offenses, as specifically noted in the indictment and jury instructions. R.C. 2923.31(I)(2)(c).[4] Our disposition of the tampering with records counts therefore does not compel us to reverse the conviction of engaging in corrupt activity. There is sufficient evidence based on Briggle's testimony that he created the invoices from the information provided by Burns and Burns's action in delivering the false invoices to CMSD to prove beyond a reasonable doubt that Burns conspired to tamper with records. Burns's fifth assignment of error is overruled.

---

[4]Burns argues in his supplement to his motion for reconsideration, that R.C. 2923.31(I)(2)(c) and 2923.01 conflict because R.C. 2923.01 does not criminalize conspiracy to tamper with records. R.C. 2923.31(I)(2)(c) criminalizes conspiracy to tamper with records by including such as an activity that can constitute a pattern of corrupt activity. We see no conflict. The legislature created two distinct crimes in conspiracy and engaging in a pattern of corrupt activities. Each has its own elements and, therefore, cannot be said to conflict.

**Restitution and Fines**

{¶ 36} Burns third assignment of error challenges the trial court's decision to impose fines and restitution without determining his ability to pay and without holding a hearing to establish the amount of restitution.

{¶ 37} We review the trial court's imposition of fines and restitution under the abuse of discretion standard. The term abuse of discretion means "an unreasonable, arbitrary, or unconscionable action." *State ex rel. Doe v. Smith*, 123 Ohio St.3d 44, 47, 2009-Ohio-4149, 914 N.E.2d 159. It is "a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence. The term has been defined as a view or action that no conscientious judge, acting intelligently, could honestly have taken." (Citations and quotations omitted.) *State v. Hancock*, 108 Ohio St.3d 57, 77, 2006-Ohio-160, 840 N.E.2d 1032.

{¶ 38} At the sentencing hearing, the trial court imposed restitution in the amount of $23,192.74 for the cost of the state audit and $100,000 for the insurance deductible paid by CMSD. The trial court also imposed a $100,000 fine. Before addressing the merits of the assignment of error, we first note that the original sentencing entry dated July 14, 2010, incorrectly memorialized the trial court's announced decision. The original sentencing entry stated the restitution totaled $223,192.74, rather than the $123,192.74 announced. Thus, the nunc pro tunc entry entered on July 29, 2010, was the proper remedy to correct the clerical

mistake regarding the restitution. *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924, ¶ 15.

{¶ 39} Courts may order restitution to compensate the victims under certain conditions. R.C. 2929.18(A)(1). If the court imposes restitution at sentencing, it must do so in open court at that time and also hold a hearing on restitution if the offender disputes the amount. Id. In the current case, the trial court imposed restitution at the sentencing hearing. Burns disputed the amount of restitution prior to sentencing. Rather than holding a hearing, the court imposed restitution subject to the state providing the necessary foundation. The trial court specifically noted that Burns could challenge the amount after the state filed the evidentiary support, but it nonetheless entered the sentencing entry as a "provisional" order dated July 14, 2010, with the total amount of restitution included. The trial court ratified the "provisional" order on July 30, 2010, after the state filed the required support. In the later order, the trial court stated the restitution would be "final in ten days from the date of this order unless defendant requests a hearing within that time."

{¶ 40} However, Burns filed the within appeal on July 27, 2010, divesting the trial court of jurisdiction to resolve the restitution issue. The July 14, 2010 order contained all the required elements to constitute a final appealable order. Most important for this discussion, it contained a definite amount of restitution. See *State v. Brewer*, Cuyahoga App. No. 94144, 2010-Ohio-5242. There is no

statutory authority allowing the court to exercise continuing jurisdiction to modify the amount of restitution after sentencing. Id. at ¶15. We find the trial court erred by imposing restitution without conducting a hearing to ascertain the amount of loss suffered by the victim.

{¶ 41} We now turn to the imposition-of-fines issue. Courts may impose fines upon the offender provided that the court considers the offender's present and future ability to pay the amount of restitution. R.C. 2929.19(B)(6). The failure to object to the amount of the fine at a time when the trial court could correct that error constitutes a waiver of all but plain error. *State v. Baker*, Cuyahoga App. No. 93574, 2010-Ohio-4480, ¶ 11. "In other words, when a defendant does not object at the sentencing hearing to the amount of the fine and does not request an opportunity to demonstrate to the court that he does not have the resources to pay the fine, he waives any objection to the fine on appeal." Id.

{¶ 42} This court has previously held that "[p]rior to imposing restitution, a trial court shall consider the offender's present and future ability to pay the amount of the sanction or fine. R.C. 2929.19(B)(6). There must be some evidence in the record the trial court considered defendant's present and future ability to pay the sanction. While a court is neither required to hold a hearing to make this determination nor indicate in its judgment entry that it considered a criminal defendant's ability to pay, there must be some evidence in the record to show that

the court did consider this question." (Internal citations and quotations omitted.) *State v. Cosme*, Cuyahoga App. No. 90075, 2008-Ohio-2811, ¶ 34.

{¶ 43} Burns did not object to the amount of the fine. His only objection was to the amount of restitution. We agree with the state that there was ample evidence from the sentencing hearing and the trial itself to establish Burns's ability to pay the fine. Burns made over $300,000 a year from working for CMSD and his pension, and owned a home and multiple cars. Furthermore one of Burns's defenses at trial was that he made enough money and carried little debt so there was no reason to steal. The trial court may rely on trial testimony in considering the defendant's ability to pay fines. Id. The trial court, however, did not indicate at the sentencing hearing whether it considered Burns's present or future ability to pay the fine.

{¶ 44} For the foregoing reasons, Burns's third assignment of error is sustained. We remand the case for the limited purpose of holding a hearing on the amount restitution and to resolve whether the court considered Burns's present and future ability to pay the financial sanctions.

**Ineffective Assistance of Counsel**

{¶ 45} Burns's sixth assignment of error raises an ineffective assistance of counsel, claiming his trial counsel did not object to the improper jury instruction on the theft in office charge and by not objecting to the imposition of restitution and fines. Our disposition of Burns's third assignment of error renders the latter argument moot.

{¶ 46} In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 310, 2009-Ohio-2961, 911 N.E.2d 242, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland*, 104 S.Ct. at 2065. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 1999-Ohio-102, 714 N.E.2d 905. The defendant has the burden of proving his counsel rendered ineffective assistance. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 223.

{¶ 47} As we previously stated, the state's entire case established that Burns and Briggle received money that they were not entitled to receive by setting up the purchase of equipment and services that were not delivered to CMSD. Implicit in

that fact pattern is that either Burns received money that exceeded the consent of CMSD or Burns committed the theft by deceiving CMSD into believing that equipment was actually purchased. Most important, the jury found Burns guilty of tampering with records, which includes an element that Burns knowingly defrauded CMSD by deception. Both offenses were based on the same pattern of behavior. Since the jury found that Burns deceived CMSD for the purposes of the tampering with records charges, the trial court's failure to specifically state that the jury needed to find deception for the theft in office charge did not deprive Burns of a fair trial. Burns's sixth assignment of error is overruled.

**Conclusion**

{¶ 48} For the foregoing reasons, Burns's second assignment of error is sustained in part and his third assignment of error is sustained. All others are overruled.

{¶ 49} We affirm the decision of the trial court in part, reverse in part, and remand for further proceeding consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY EILEEN KILBANE, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR